# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PAMELA S. MAGALLANES,

    *Plaintiff,*

vs.

Case No. 14-1217-EFM

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Pamela Magallanes seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits. Magallanes argues that the administrative law judge ("ALJ") erred in determining that she was not disabled from August 2005 through December 2010. Magallanes further contends that this Court should reverse the ALJ's decision and remand the case for an immediate payment of benefits. The Commissioner agrees that the ALJ's decision was flawed, but requests that the case be remanded for further administrative proceedings in its motion to reverse and remand (Doc. 19). Because there is a reasonable possibility that Magallanes could still be denied benefits, the Court grants the Commissioner's motion and remands the case for further administrative proceedings.

# I. Factual and Procedural Background

On August 31, 2010, Magallanes protectively applied for disability insurance benefits, alleging a disability beginning August 1, 2005. The application was denied initially and upon reconsideration. Magallanes then asked for a hearing before an ALJ.

ALJ Peter J. Baum conducted an administrative hearing by video on August 13, 2012. Magallanes chose to appear and testify without the assistance of an attorney. An impartial vocational expert also testified about potential employment prospects for someone of Magallanes' capabilities.

On October 16, 2012, the ALJ issued his written decision finding that Magallanes had last met the insured status requirements of the Social Security Act on December 31, 2010. The ALJ found that from 2005 through 2010, Magallanes suffered from cervical and lumbar degenerative disc disease, status post lumber fusion at L4-5 and L5-S1, status post fusion from C4 through C7, recurrent major depressive disorder, and post-traumatic stress disorder. This combination of impairments did not meet or medically equal the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then determined that Magallanes had the residual functional capacity ("RFC") to perform sedentary work, with a few, less-limiting exceptions.

In determining Magallanes' RFC, the ALJ noted that her testimony was generally credible. But the ALJ did discount Magallanes' claim that she could not perform any work because it was unsupported by the medical evidence. The ALJ primarily supported the RFC by noting that Magallanes had recovered well from her surgeries and that medical test results were generally positive. Furthermore, the ALJ considered three medical opinions in determining

Magallanes' RFC. The ALJ noted that Dr. DeGrandis did not impose any functional limitations, while Dr. Cole and Dr. Rozenfeld each restricted Magallanes to a wide range of sedentary work.

The ALJ concluded that Magallanes had been unable to perform her past relevant work. But the ALJ went on to find that a significant number of jobs existed that Magallanes could have performed in her regional economy. Accordingly, the ALJ determined that Magallanes was not under a disability from August 2005 through December 2010, when she was last insured. Magallanes requested reconsideration of the ALJ's decision, and the Appeals Council denied the request on May 13, 2014. Accordingly, the ALJ's October 2012 decision became the final decision of the Commissioner.

Magallanes filed a complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and remand for an immediate grant of disability insurance benefits. She contends that the ALJ erroneously determined her RFC by mischaracterizing the medical opinions of Dr. Cole and Dr. DeGrandis, exaggerating her improvement, and failing to apply the proper legal standard regarding testimony about pain and credibility. The Commissioner concedes that the ALJ's decision was flawed, but requests remand for a new administrative hearing.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial

---

[1] 42 U.S.C. § 405(g).

evidence in the record and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7] The steps are designed to be followed in order. If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

---

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[9] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12] The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III. Analysis

Magallanes contends that the ALJ incorrectly evaluated the medical opinions of Dr. Cole and Dr. DeGrandis in determining her RFC. The Commissioner seems to agree. Instead of

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11] *Id.* at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

responding to Magallanes' brief, the Commissioner filed a very short motion claiming that the case should be remanded for further proceedings. Specifically, the Commissioner requests that upon remand the ALJ (1) reevaluate the medical opinions of Dr. Cole and Dr. DeGrandis; (2) reevaluate Magallanes' RFC; (3) obtain supplemental vocational evidence, if necessary; and (4) take any steps necessary to complete the administrative record. While the Commissioner does not go on to explain the request in any meaningful detail, the Court can glean from the Commissioner's motion that it concedes the medical opinions were improperly considered and the RFC determination is flawed. Although both parties agree that the ALJ erroneously considered the medical opinions, they disagree as to what the proper remedy is on remand. Thus, the Court must review the nature of the error to determine whether the case should be remanded for an immediate award of benefits or rather for further proceedings.

### A. Consideration of Medical Opinions

Magallanes argues that in determining her RFC, the ALJ misrepresented the medical opinions of both Dr. Cole and Dr. DeGrandis. The RFC assessment must be based on all relevant evidence in the case record.[14] It must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[15] If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical opinion was not adopted.[16] But there is no requirement that the RFC findings directly correspond to a specific

---

[14] Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

[15] *Id.* at *7.

[16] *Id.*

medical opinion in the record.[17] And the RFC assessment need not discuss every single piece of evidence.[18] Although the record must demonstrate that the ALJ considered all of the evidence, he is only required to discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects.[19]

In his RFC assessment, the ALJ stated "[t]he most restrictive functional capacity limitations imposed on the claimant have been adopted herein. Dr. Cole . . . restricted the claimant to a wide range of sedentary work." And the ALJ ultimately determined that Magallanes had the RFC to perform sedentary work as described in 20 C.F.R. § 404.1567(a), with certain, less-restrictive lifting limitations. More specifically, the ALJ determined that Magallanes could lift up to 20 pounds occasionally and 10 pounds frequently, while under § 404.1567(a), sedentary work never involves lifting more than 10 pounds. This determination is inconsistent with Dr. Cole's opinion. Dr. Cole actually concluded that Magallanes could not lift more than 10 pounds even occasionally. So the ALJ's RFC was less restrictive than Dr. Cole's opinion. Therefore, contrary to his claim, the ALJ did not adopt the most restrictive limitations that had been imposed on Magallanes in his RFC assessment.

The ALJ also represented that "Dr. DeGrandis did not impose any functional limitations on the claimant." This is a misrepresentation of the record. In fact, Dr. DeGrandis concluded that Magallanes could only work in an environment that allowed for minimal physical exertion,

---

[17] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[18] *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

[19] *Id.*

minimal psychological stress, and regular breaks. Such restrictions certainly represent functional limitations.

In short, the ALJ claimed that he adopted the most restrictive limitations in setting Magallanes' RFC, but in reality he failed to do so. It was not error per se for the ALJ's RFC determination to conflict with a medical opinion.[20] But the ALJ must explain why his RFC assessment conflicts with an opinion from a medical source.[21] Here, the ALJ did not explain why his RFC assessment differed from Dr. Cole's opinion because he failed to acknowledge that any difference existed. This analysis constitutes reversible error. The ALJ must link his findings to specific evidence.[22] In this case, the ALJ mischaracterized the specific evidence on which he relied. Therefore, his findings could not be properly linked to specific evidence.

### B. Proper Remedy on Remand

The Court now turns to the issue of which remedy is proper. When the Commissioner's decision is reversed, it is within the Court's discretion to remand either for further administrative proceedings or for an immediate award of benefits.[23]

Remand for an immediate award of benefits is appropriate if the Commissioner has failed to satisfy its burden at step five and when there has been a long delay due to the Commissioner's erroneous disposition of the proceedings.[24] And the Commissioner "is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and

---

[20] *See Chapo*, 682 F.3d at 1288.

[21] Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (Soc. Sec. Admin. July 2, 1996).

[22] *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

[23] *Ragland v. Shalala*, 992 F.2d 1056, 1606 (10th Cir.1993).

[24] *Id.*

gathers evidence to support its conclusions."[25] Another key question is whether remanding for further proceedings would serve a useful purpose or merely delay the receipt of benefits.[26] Thus, relevant factors to consider are: (1) the length of time the matter has been pending; and (2) whether remand for additional proceedings would serve any useful purpose, given the available evidence.[27] Remand for an immediate award of benefits is appropriate only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits.[28]

*1. Length of Time*

The Tenth Circuit has not definitively identified at what point a matter has been pending for "too long." The Tenth Circuit has remanded a case for additional fact-finding when the matter had been pending for over nine years.[29] Conversely, other cases been have remanded for an immediate award of benefits in part because they had been pending for five or six years.[30] This factor is also more likely to weigh against the Commissioner if the case has already been remanded before.[31]

---

[25] *Bryant v. Colvin*, 2013 WL 2389486, at *2 (D. Kan. May 30, 2013) (citing *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993)).

[26] *See Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 545 (10th Cir. 1987).

[27] *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

[28] *Bryant*, 2013 WL 2389486, at *2 (citing *Gilliland v. Heckler*, 786 F.2d 178, 18-85 (3rd Cir. 1986)).

[29] *Tucker v. Barnhart*, 201 F. App'x 617, 625 (10th Cir. 2006).

[30] *See Groberg v. Astrue*, 415 F. App'x 65, 73 (10th. Cir. 2011) ("It has been over five years since [the Plaintiff] first applied for supplemental security income and disability benefits. There is nothing to be gained from prolonging the proceedings any further."); *Madron v. Astrue*, 311 F. App'x 170, 182 (10th. Cir. 2009) ("[A]n immediate award of benefits is appropriate. It has been nearly six years since [the Plaintiff] first applied for supplemental security income and disability benefits.").

[31] *See Huffman v. Astrue*, 290 F. App'x 87, 89-90 (10th Cir. 2008) ("Six years have passed since [the Plaintiff] filed for benefits. … The case has already been reversed and remanded once and our resolution of this appeal would require yet further proceedings.").

Magallanes first applied for benefits in August 2010, so this matter has been pending for more than five years. And it has not been remanded for further proceedings in the past. While the Court recognizes that five years is a long time for any matter to be pending, this period is not so lengthy as to entirely foreclose the remedy of remand for additional proceedings.[32] If remand for additional proceedings could serve a useful purpose, then it is the appropriate remedy.

 2. *Usefulness of Additional Proceedings*

To determine whether or not additional proceedings would be useful, the Court must consider the nature of the ALJ's error. Generally, the Court will remand a case for an award of benefits when the evidence clearly establishes that the claimant was disabled.[33] If the record shows that there would be no reasonable probability that Magallanes would be denied benefits had a proper RFC assessment been conducted, then additional proceedings would serve no useful purpose.[34] That is not the case here.

Although the ALJ improperly considered the medical opinions, the record does not plainly establish that Magallanes is disabled. For instance, Dr. Rozenfeld opined that Magallanes could perform simple, routine work and Dr. Cole opined that she could lift up to 10 pounds occasionally. In addition, Dr. Chang noted that Magallanes generally recovered well from her surgeries. So it is possible that even with a new RFC, vocational evidence would show that Magallanes could still have performed work. On the other hand, it is also possible that in light of this reexamination of the medical opinions, the ALJ could determine Magallanes was

---

[32] *E.g.*, *Hamby v. Astrue*, 260 F. App'x 108 (10th Cir. 2008) (remanding for further proceedings when case had been pending for over six years); *Miller v. Chater*, 99 F.3d 972 (10th Cir. 1996) (remanding for further proceedings when case had been pending for almost eight years).

[33] *Bryant*, 2013 WL 2389486, at *4.

[34] *See Groberg*, 415 F. App'x at 73; *Madron*, 311 F. App'x at 182.

disabled. Because that determination is not obvious, additional proceedings would be useful. Accordingly, the Court finds that remand for further proceedings is the proper remedy.

On remand, the ALJ should reexamine the opinions of Dr. Cole and Dr. DeGrandis. And if the RFC assessment differs from any medical opinion, the ALJ should explain his decision as required.[35]

**C. Additional Considerations**

Magallanes alleged additional errors in the ALJ's decision that the Commissioner ignored in its motion for remand. Magallanes contends that in determining her RFC, the ALJ exaggerated her improvement from various surgeries and failed to adhere to the correct legal standard before discounting her credibility. The Court will consider these arguments to determine whether the ALJ needs to address them on remand as well.

*1. Exaggeration of Post-Surgery Improvement*

Magallanes alleges that in determining her RFC, the ALJ ignored certain medical records to conclude she was improving from her surgeries. The Court disagrees. The record in this case is quite voluminous. And while Magallanes occasionally complained of post-surgery complications, the evidence as a whole supports the ALJ's finding that she was improving prior to the date she was last insured.

Based on the post-surgery records, the ALJ concluded generally that Magallanes had improved from spinal surgeries and carpal tunnel release. Magallanes points to several pieces of evidence that the ALJ allegedly ignored in reaching this conclusion. But on the whole, the ALJ

---

[35] The ALJ should be mindful of any potential ripple effects that this new evaluation may have on remand. For instance, if the ALJ's reexamination of the medical opinions alters his RFC, then further vocational evidence will be required for steps four and five.

fairly summarized the relevant records. Generally, Magallanes' post-surgery reports indicated improvement. In May 2007, Dr. Whitaker reported that Magallanes reported reduced neck and arm pain following her cervical fusion. In June, Dr. Whitaker reported Magallanes' arm pain was completely gone, although her back was aggravated from a recent fall. In August, Dr. Whitaker stated that Magallanes was "doing well." In each of these 2007 reports, Dr. Whitaker noted that the x-rays showed good lateral position. The pieces of evidence that Magallanes claims the ALJ ignored were not reflective of the medical evidence as a whole. Most of the "ignored" evidence that Magallanes points to are specific instances during her recovery when she reported pain or concerns. But what Magallanes reported is not necessarily what the medical sources concluded. Ultimately, the x-rays and post-surgery checkups from 2007 until 2009 showed that Magallanes was getting better. So the ALJ's conclusion that Magallanes was improving is supported by substantial evidence.[36] And the Court will not "reweigh the evidence nor substitute [its] judgment" for the ALJ's.[37]

Magallanes also contends that it was error for the ALJ to ignore medical records that postdated the date she was last insured. But in her brief, Magallanes fails to identify how these records were probative or weigh in her favor. In fact, the evidence that Magallanes identifies and claims that the ALJ improperly ignored are contained in records compiled prior to 2010. It is not enough for Magallanes to simply allege error without illustrating how she was prejudiced. "The

---

[36] *Barkley*, 2010 WL 3001753, at * 1 ("Substantial evidence … is such evidence as a reasonable mind might accept to support the conclusion.").

[37] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).

court will not search through the record in response to a party's arguments in an attempt to identify prejudicial error."[38]

## 2. *Improper Credibility Assessment*

Magallanes also argues that the ALJ failed to properly apply the framework put forth in *Luna v. Bowen* in discounting her credibility.[39] Specifically, she contends that the ALJ discounted her credibility without properly considering relevant factors required by law. This argument mischaracterizes both relevant law and the ALJ's findings. First, the ALJ is not required to extensively consider every single factor laid out in *Luna* and its progeny.[40] Second, the ALJ actually found that Magallanes' testimony was generally credible. And he supported this finding by citing several relevant factors.[41] So in reality, Magallanes' claim that the ALJ ignored relevant factors to improperly discount her credibility is factually incorrect in both regards.

The ALJ only found that one, narrow aspect of Magallanes testimony was not credible—her claim that she could not perform *any* work. This claim, the ALJ found, was not supported by the medical evidence. And indeed, Dr. Cole, Dr. Rozenfeld, and Dr. DeGrandis all opined that Magallanes could perform at least *some* work. Therefore, the one aspect of Magallanes' credibility that the ALJ discounted was supported by substantial evidence. "It is well established

---

[38] *Patterson v. Colvin*, 2015 WL 8375132, *6 (D. Kan. Dec. 9, 2015).

[39] 834 F.2d 161 (10th Cir. 1987).

[40] *Stalford v. Colvin*, 2013 WL 872336, at *12 (D. Kan. Mar. 8, 2013) ([T]he *Luna* and *Kepler* list of credibility factors is not a list of 'sanctioned' factors … rather, it is a *demonstrative* list of types of factors which might be relevant.").

[41] To name a few, the ALJ considered her work history, past surgeries, daily activities, and psychological history. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("[S]o long as the ALJ sets forth the specific evidence he relies on in formulating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence.").

that credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."[42]

### IV.   Summary

For the reasons stated above, the Court grants the Commissioner's motion, and reveres the decision of the Commissioner. The case is remanded for additional proceedings. On remand, the ALJ is directed to conduct a new RFC assessment after reevaluating the medical opinions of Dr. Cole and Dr. DeGrandis. Furthermore, the Commissioner is reminded that he is not entitled to adjudicate a case ad infinitum.

**IT IS THEREFORE ORDERED** that the Commissioner's Motion to Remand and Reverse (Doc.19) is **GRANTED**. The decision of the Commissioner is reversed, and the case is remanded (sentence four remand) for further proceedings in accordance with this opinion.

**IT IS SO ORDERED**.

Dated this 3rd day of February, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[42] *Kemper v. Colvin,* 597 F. App'x 545, 546 (10th Cir. 2015) (quoting *Wilson*, 602 F.3d at 1144) (internal quotation marks omitted).